UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 09-400-JBC

SANDRA K. GRIWATSCH, PLAINTIFF,

V.  **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on cross-motions for summary judgment on Sandra K. Griwatsch's appeal of the Commissioner's denial of her application for disability insurance benefits and supplemental security income (R. 9, 10). The court, having reviewed the record and being otherwise sufficiently advised, will grant the Commissioner's motion and deny Griwatsch's motion.

I. OVERVIEW OF THE PROCESS

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Commissioner properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court

does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II. THE ALJ'S DETERMINATION

At the time of the alleged disability onset date, Griwatsch was a 46-year-old female with an eighth-grade education and a GED. AR 16. She alleged disability beginning on December 15, 2001, due to disabling conditions arising from chronic depression, anxiety, PTSD, COPD, chronic back pain, chronic diarrhea, and ulcer

2

colitis. Griwatsch filed her claim for disability insurance benefits and supplemental security income on September 1, 2006, which was denied initially on December 7, 2006, and upon reconsideration on April 23, 2007. AR 70, 82. After a hearing held on December 11, 2008, Administrative Law Judge ("ALJ") Don C. Paris determined that Griwatsch did not suffer from a disability as defined by the Social Security Act. AR 61. At Step 1, the ALJ determined that Griwatsch had not engaged in substantial gainful activity since the alleged onset of disability. AR 63. At Step 2, the ALJ found that Griwatsch had the following severe impairments: obesity; borderline intellectual functioning; major depressive disorder; anxiety with post traumatic stress disorder; alcohol dependence in early full remission; status post lobectomy for recurrent hemoptysis and infection, resolves; mild chronic obstructive pulmonary disease; and chronic back pain. AR 63. The ALJ then determined that Griwatsch's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. AR 64. At Step 4, the ALJ found Griwatsch had the residual functional capacity to perform light exertional work. AR 66-67. Finally, at Step 5, the ALJ found that Griwatsch could perform a significant number of jobs in the state and national economy. The ALJ, therefore, denied Griwatsch's claims for disability insurance benefits and supplemental security income. AR 68. Griwatsch appealed to the Appeals Council, her appeal was denied, and she commenced this action.

## III. LEGAL ANALYSIS

Griwatsch claims the Commissioner's decision was not supported by substantial evidence for three reasons: (1) The ALJ erred in finding that Griwatsch's chronic diarrhea/irritable bowel syndrome was not a severe impairment; (2) the ALJ erred in his findings of fact regarding Griwatsch's psychological impairments; and (3) the ALJ failed to articulate all Griwatsch's limitations in the hypothetical question he recited to the vocational expert. The court will consider these arguments in turn.

### A. Diarrhea/irritable bowel syndrome

The ALJ did not err in finding that Griwatsch's diarrhea/irritable bowel syndrome was a non-severe impairment because that finding had no legal effect on the ALJ's analysis. The ALJ made the finding at Step 2. For a claimant to advance beyond Step 2, an ALJ need only find that a claimant has one severe impairment. *Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). An ALJ must proceed to Step 3 regardless of whether a claimant has one or more severe impairments. *Id.* Here, the ALJ found that Griwatsch had eight severe impairments. Griwatsch would have realized no different result at Step 2 even if the ALJ had found that her diarrhea/irritable bowel syndrome also was a severe impairment.

### B. Griwatsch's psychological impairments

Substantial evidence supports the ALJ's assessment of Griwatsch's

psychological impairments and the findings and conclusions that he drew from his assessment.

According to Griwatsch, the consultative examiner, Dr. Jennifer Wilke-Deaton, opined that Griwatsch had two marked mental limitations, but the ALJ erroneously failed to acknowledge those alleged marked limitations in his findings of fact and to determine that "Paragraph B" criteria had been met. For Paragraph B criteria to have been met, the mental impairments must have resulted in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404 subpt. P-12.01. In her report, Dr. Wilke-Deaton found that Griwatsch had moderate to marked impairment in ability to adapt or respond to pressures associated with day-to-day changes and moderate to marked difficulty adapting and responding to changes in the workplace. AR 364. Those impairments are nearly identical, and both fit comfortably in the "restriction of activities of daily living" category. Even if those two challenges constitute two different findings of marked difficulty or restriction, both fall in the same category and would constitute only one area of marked difficulty. Dr. Wilke-Deaton's opinion, moreover, was not dispositive; it was merely one part of the entire analysis. 20 C.F.R. §§ 404.1520, 416.920. The ALJ properly found that Griwatsch's mental impairments did not cause at least two marked limitations in

the "Paragraph B" criteria.

The ALJ also considered Griwatsch's mental impairments in his findings on her residual functional capacity. The ALJ noted that Griwatsch received treatment for anxiety and depression, which were precipitated by the death of her son. AR 68, 344, 348, 547, 551, 559, 561, 564, 576. Griwatsch stated that she has difficulty maintaining attention and persistence, is increasingly socially isolated, lacks motivation, and has difficulty making decisions. AR 363-64. Based on the medical evidence in the record, the ALJ found that Griwatsch's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were less than fully credible. AR 68. In coming to that conclusion, the ALJ noted that counseling and medication helped Griwatsch's depression. AR 27, 355, 363-64, 562, 568, 570. The ALJ also noted that Griwatsch denied having significant difficulty comprehending written or oral instruction. AR 68, 364. Griwatsch, moreover, was found to be maintaining or making progress in March 2007, August 2007, and November 2007. AR 558, 562, 570, 604. Examinations in 2006 and 2007 revealed that her general behavior, appearance, cognition, and perception were often within normal limits. AR 554, 558-59, 561-62, 569, 600-04. In view of that evidence, the ALJ had substantial support when he concluded that Griwatsch could perform simple, repetitive work tasks in an environment that is object-focused with infrequent and

6

casual contact with co-workers and supervisors and limited contact with the general public, and that is low stress without excessive productivity. AR 67.

### C. The ALJ's hypothetical question to the vocational expert

Contrary to Griwatsch's assertion, the ALJ's hypothetical question reflected the reality of her condition. The hypothetical question did not have to contain a word-for-word description of any doctor's opinion; it had to include only the limitations that the ALJ found credible. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The hypothetical question included those limitations. The ALJ asked the vocational expert to assume an individual who is limited to simple, repetitive, object-focused work, infrequent and casual contact with co-workers and supervisors, limited contact with the general public, and a low-stress environment without excessive productivity demands. AR 48-50.

Griwatsch asserts that the vocational expert "readily admitted that if at any time the level of impairment went to the 'marked' degree . . . that *all* jobs would be eliminated." R. 9 at 8 (emphasis in original). Griwatsch, however, was not found to have "marked" degree of difficulty in any area; she had only a moderate to marked degree of difficulty. AR 67-68.

In response to the ALJ's hypothetical question, the vocational expert identified jobs that an individual with Griwatsch's residual functional capacity and other vocational characteristics could perform, including housekeeper, order caller,

7

and gatekeeper, all with a total of 1.55 million jobs nationally. The ALJ also found that Griwatsch could perform past work as a salad preparer and similar jobs that exist in the nation. Because the hypothetical question set forth Griwatsch's conditions that were found to be relevant and credible, the vocational expert's testimony provides support for the Commissioner's decision that Griwatsch is not disabled.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that Griwatsch's motion for summary judgment (R. 9) is **DENIED**.

A separate judgment will issue.

Signed on March 24, 2011

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY